UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| CITY OF PONTIAC GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | § § § § § | Case No. 1:15-cv-00374-LY |
| | | CLASS ACTION |
| | | The Honorable Lee Yeakel |
| Plaintiff, | § § | |
| vs. | § § | |
| DELL INC., et al., | § § | |
| Defendants. | § § § | |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

I.     THE LITIGATION .............................................................................................2

II.    TERMS OF THE SETTLEMENT ......................................................................4

III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............5

     A.     The Proposed Settlement Meets the Standard for Preliminary Approval ...............5

     B.     Lead Plaintiff and Its Counsel Have Adequately Represented the Class ...............7

     C.     The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ......................................................7

     D.     The Relief Provided to the Class is Adequate ......................................................7

           1.     The Substantial Benefits for the Class, Weigh Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval ................................................................................7

           2.     The Proposed Method for Distributing Relief is Effective .........................9

           3.     Attorneys' Fees ........................................................................................9

           4.     The Parties Have No Side Agreements Besides Opt-Outs .......................10

     E.     There Was No Preferential Treatment; the Proposed Plan of Allocation Is Designed to Treat Class Members Equitably...........................................................10

     F.     The Factors Considered When Granting Final Approval Also Support Preliminary Approval of the Proposed Settlement .................................................11

IV.   THE PROPOSED NOTICE PROGRAM IS APPROPRIATE AND SATISFIES THE REQUIREMENTS OF RULE 23 AND THE PSLRA ............................................15

V.    PROPOSED SCHEDULE OF EVENTS..............................................................17

VI.   CONCLUSION....................................................................................................17

4835-9923-3188.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................8

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................13

*Hays v. Eaton Grp. Attys., LLC*,
  No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029
  (M.D. La. Feb. 4, 2019) ....................................................5, 7, 13

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ..................................................10

*Kamakana v. City & Cty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ................................................10

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ................................................5, 8

*Manchaca v. Chater*,
  927 F. Supp. 962 (E.D. Tex. 1996)........................................12

*Marcus v. J.C. Penney Co.*,
  No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 214427
  (E.D. Tex. Dec. 18, 2017)......................................................10

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ................................................13

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978) ................................................11

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ..................................................11

*United States v. Tex. Educ. Agency*,
  679 F.2d 1104 (5th Cir. 1982) ..............................................6, 7

*Young v. Katz*,
  447 F.2d 431 (5th Cir. 1971) ..................................................14

4835-9923-3188.v1

Page

## STATUTES, RULES AND REGULATIONS

15 U.S.C.

§78j(b)............................................................................................................2
§78t(a)............................................................................................................2
§78u-4(a)(4)..................................................................................................10
§78u-4(a)(7)..................................................................................................16

Federal Rule of Civil Procedure

Rule 23(e)..........................................................................................5, 6, 14
Rule 23(e)(1).........................................................................................5, 15
Rule 23(e)(1)(B)............................................................................................15
Rule 23(e)(2)...........................................................................................5, 6
Rule 23(e)(2)(A)..............................................................................................7
Rule 23(e)(2)(B)..............................................................................................7
Rule 23(e)(2)(C)(i)...........................................................................................7
Rule 23(e)(2)(C)(ii)..........................................................................................9
Rule 23(e)(2)(C)(iii).........................................................................................9
Rule 23(e)(2)(C)(iv).......................................................................................10
Rule 23(e)(3)...................................................................................................6

## SECONDARY AUTHORITIES

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2013)
§23.162[3]....................................................................................................14

*Manual for Complex Litigation* (4th ed. 2004)
§13.14............................................................................................................6

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action
Litigation: 2018 Full-Year Review*,
(NERA Jan. 29, 2019)....................................................................................13

4835-9923-3188.v1

## I.     INTRODUCTION

Lead Plaintiff City of Pontiac General Employees' Retirement System ("PGERS") respectfully submits this memorandum in support of preliminary approval of the settlement of the above-captioned litigation on the terms set forth in the Stipulation of Settlement dated September 13, 2019 (the "Stipulation"), filed herewith.[1]  Following arm's-length negotiations, the Settling Parties have reached an agreement to settle Lead Plaintiff's and the Class' claims against the Defendants[2] for $21,000,000 for the benefit of the Class.[3]  The Settlement is the result of thorough investigation, vigorous litigation efforts, and well-informed, arm's-length negotiations between and among highly experienced counsel.

Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and therefore asks the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order").  The Notice Order will: (1) preliminarily approve the terms of the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Class; and (3) schedule a settlement hearing (the "Settlement Hearing") at which the Court will consider the request for final approval of:  (a) the Settlement set forth in the Stipulation; (b) the Plan of Allocation of settlement proceeds among Class Members; and (c) an award of attorneys' fees and expenses to Lead Counsel and award to Lead Plaintiff in connection with its representation of the Class.

---

[1]   All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation.

[2]   The Defendants are: Dell Inc. ("Dell" or the "Company"), Michael S. Dell, Brian T. Gladden and Stephen J. Felice.

[3]   The Class is defined as: all Persons and entities who bought or acquired Dell common stock between February 22, 2012 and May 22, 2012, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class are those Persons who timely and validly exclude themselves therefrom.

## I.      THE LITIGATION

The Litigation is pending in the United States District Court for the Western District of Texas (the "Court").  The initial complaint in this action was filed on May 21, 2014 in the United States District Court for the Southern District of New York.  ECF No. 2.  On May 7, 2015, the Litigation was transferred to this Court.  ECF No. 38.  On June 12, 2015, the Court appointed PGERS as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.  ECF No. 68.

Lead Plaintiff's Amended Complaint for Violation of the Federal Securities Laws (the "Complaint") alleges that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 by issuing materially false and misleading statements and omissions during the Class Period. ECF No. 72.  Specifically, Lead Plaintiff alleges that Defendants failed to disclose that Dell was experiencing weakened demand and pricing pressure in its PC product line in non-U.S. markets.  *Id*. Additionally, Lead Plaintiff alleges that as growth in Dell's PC product line was declining, Defendants further concealed operational deficiencies within the Company's sales division, which were also hindering Dell's PC business.  *Id.*  The Complaint further alleges that as a result of Defendants' allegedly false statements, Dell's stock traded at artificially inflated prices during the Class Period, until the alleged misstatements and omissions were disclosed on May 22, 2012.  *Id.*

On September 8, 2015, Defendants moved to dismiss the Complaint.  ECF No. 74.  Lead Plaintiff filed an opposition to Defendants' motion to dismiss on October 22, 2015 (ECF No. 78), and on November 23, 2015, Defendants filed a reply.  ECF No. 83.  By order dated September 16, 2016, the Court denied Defendants' motion to dismiss.  ECF No. 93.  Defendants filed an answer to the Complaint on November 14, 2016.  ECF No. 100.

On March 9, 2017, PGERS moved for class certification, to appoint PGERS as the class representative, and to appoint Robbins Geller as class counsel.  ECF Nos. 108-109.  Following

extensive briefing in connection with PGERS' motion to certify (ECF Nos. 114, 119, 120, 121, 123, 125), on March 29, 2018, the Court certified the following class:

> All persons and entities who bought or acquired Dell common stock between February 22, 2012 and May 22, 2012, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Defendants have or had a controlling interest.

ECF No. 131.

The parties conducted extensive fact discovery from November 2016 through June 2018. During discovery, Defendants produced over 87,000 documents, totaling nearly 600,000 pages. Lead Plaintiff deposed 17 witnesses, which included Dell's current and former employees. After completion of fact discovery, the parties exchanged expert reports from seven experts in various disciplines and completed expert depositions in March 2019.

On February 18, 2019, Defendants filed their motion for summary judgment seeking to dismiss Lead Plaintiff's claims in their entirety. ECF Nos. 151-157. On April 8, 2019, Lead Plaintiff filed its opposition to Defendants' motion for summary judgment (ECF Nos. 167-168) and on May 8, 2019, Defendants filed their reply. ECF Nos. 185-187. The parties also filed several motions to exclude the reports and testimony of the expert witnesses designated in this case. *See* ECF Nos. 173-180, 193-200, 203-209. Defendants' motion for summary judgment and the parties' motions to exclude were fully briefed and pending before the Court at the time the settlement was reached.

In February 2018, the parties engaged the services of Eric Green, a nationally recognized mediator, to facilitate settlement negotiations. On February 23, 2018, the parties engaged in an in-person mediation session with Mr. Green in Boston, Massachusetts. Before the mediation, the

parties submitted and exchanged statements with detailed descriptions of their claims and defenses and supporting evidence.  The case did not settle, and the parties continued to litigate the case.

In June 2019, the parties engaged the services of Gregory P. Lindstrom of Phillips ADR, who has extensive experience mediating complex class litigations such as this, to facilitate further settlement negotiations.  The parties attended an in-person mediation with Mr. Lindstrom in California on June 25, 2019.  The case did not settle, but the parties continued settlement discussions with the assistance of Mr. Lindstrom.  On July 26, 2019, the parties accepted a mediator's proposal from Mr. Lindstrom to resolve the Litigation for a cash payment of Twenty-One Million Dollars ($21,000,000.00) to be paid by Dell, for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.  The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement between the Settling Parties.

## II.    TERMS OF THE SETTLEMENT

The Settlement set forth in the Stipulation resolves the claims of the Class against all Defendants.  Lead Plaintiff and its counsel diligently litigated this action and, after arm's-length settlement negotiations, reached an agreement to settle this Litigation for $21,000,000 in cash, which will be paid by Dell on behalf of the Defendants.  Lead Plaintiff and its counsel concluded, after a thorough investigation of the factual and legal issues in the action, as well as consideration of the expense and risks of continued litigation, that the certain monetary recovery obtained for the benefit of the Class is a highly favorable result under the circumstances and is in the best interests of Members of the Class.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants: (a) asserted in the Litigation, or (b) could have asserted against any of the Released Defendant Parties in the Litigation or in any forum that arise out of, relate to, are connected with or in any way concern (i) the allegations, transactions, facts, matters, occurrences,

- 4 -

representations, or omissions involved, set forth, alleged, or referred to in the Litigation; and (ii) relate to the purchase or acquisition of shares of Dell common stock during the Class Period.

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Proposed Settlement Meets the Standard for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving litigation. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Hays v. Eaton Grp. Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *20 (M.D. La. Feb. 4, 2019).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis.  Pursuant to Rule 23(e)(1), as recently amended, notice of a proposed class settlement should go to class members who would be bound by the proposal only "'if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of the judgment on the proposal.'"  *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *21 (citation omitted).  Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)     the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

- 5 -

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Approval of a class action settlement under Rule 23(e) involves a two-step process: first, a "preliminary approval" order; and second, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment. *See Manual for Complex Litigation* §13.14 (4th ed. 2004). At the Settlement Hearing, the Court will have before it more detailed papers submitted in support of final approval of the Settlement and only then will it be asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate under all the circumstances. At this time, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement.

As discussed below, the Settlement clearly satisfies the standard for approval. The Settlement provides an immediate cash benefit to the Class, providing the sum of $21,000,000 for distribution to eligible Class Members. Both Lead Plaintiff and Defendants were fully prepared to continue to litigate rather than settle the action for a sum either party deemed unreasonable. Indeed, the Settlement was only reached after zealous, arm's-length negotiations with the assistance of two mediators, supporting a finding that the Settlement is fair. *See United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). Given the complexities of the Litigation and the substantial risks and uncertainties of continued litigation, Lead Counsel believes the Settlement represents a highly favorable resolution of the Litigation and eliminates the risk that the Class might not otherwise recover if litigation were to continue.

- 6 -

**B.     Lead Plaintiff and Its Counsel Have Adequately Represented the Class**

As explained above, Lead Plaintiff and its counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on their behalf, including, among other things, investigating and drafting the complaints, opposing Defendants' motion to dismiss, obtaining class certification, conducting extensive fact and expert discovery, briefing of summary judgment, and engaging in formal mediation and further arm's-length negotiations to resolve the Litigation for $21,000,000 in cash. *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *23-*24.

**C.     The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel**

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length."  A strong presumption of fairness attaches to a settlement when, like here, it is the result of arm's-length negotiation, by experienced counsel with the assistance of experienced mediators. *Tex. Educ. Agency*, 679 F.2d at 1108.  As noted-above, the Settlement was achieved only after an unsuccessful February 2018 mediation before Eric Green, a nationally recognized mediator, and a second mediation before Gregory P. Lindstrom of Phillips ADR, another experienced mediator, in June 2019.  Although the litigation did not settle during that second mediation session, the parties continued their discussions through Mr. Lindstrom.  On July 26, 2019, the parties accepted a mediator's proposal to ultimately reach an agreement-in-principle to settle the Litigation for $21,000,000.  *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *2.

**D.     The Relief Provided to the Class Is Adequate**

**1.     The Substantial Benefits for the Class, Weigh Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval**

Rule 23(e)(2)(C)(i) and the Fifth Circuit's final approval factors concerning the strength of plaintiffs' case compared to the amount of the settlement and the complexity, length and expense of

further litigation are also satisfied as the $21,000,000 recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks and delay posed by continued litigation. Settlements of class actions and shareholder litigation such as this one are "particularly favored" and are not to be lightly rejected. *Maher*, 714 F.2d at 455.

Though Lead Plaintiff remains confident in its ability to ultimately prove its claims, and believes the expert and fact discovery taken supports its allegations, further litigation and trial is always a risky proposition. While Lead Plaintiff must prove all elements of its claims to prevail, Defendants need only succeed on one defense to potentially defeat the entire action. Defendants advanced several compelling arguments disputing liability, including challenging the falsity and materiality of their alleged misstatements and Lead Plaintiff's scienter allegations. The Settling Parties also had very different views on loss causation and damages.

More specifically, Defendants maintained that none of the Class Period statements were materially false or misleading when made, and following thorough discovery efforts, there was no evidence to suggest that Defendants were in possession of material undisclosed facts that conflicted with what they said publicly. *See* ECF No. 151 at 4-18. Defendants also argued that Lead Plaintiff could not establish scienter, as the evidence demonstrates that Defendants had a good faith belief in the truth of their statements, *id.* at 18-21, and there was no evidence that Defendants were motivated to deceive. *Id.* at 22-28. Defendants also believe they have adequately rebutted the presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and that Lead Plaintiff cannot establish loss causation, because the alleged corrective disclosures were not "corrective," and Lead Plaintiff failed to account for confounding information. *See* ECF No. 151 at 28-33. Lead Plaintiff faced the risk that the Court would grant Defendants' pending summary judgment motion on any one or more of these elements, effectively ending the case.

- 8 -

The Settlement balances the risks, costs and delay inherent in complex cases evenly with respect to all parties.  Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval.  Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Litigation through a trial, a $21,000,000 settlement is a meaningful recovery that is in the best interests of the Class.

### 2.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below in §IV and in the Declaration of Michael Joaquin Regarding Notice and Administration (the "Joaquin Decl."), submitted herewith, the method for the proposed notice and claims administration process are effective.  *See* Fed. R. Civ. P. 23(e)(2)(c)(ii).  The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over the *Business Wire*.  In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim and Preliminary Approval Order.  Joaquin Decl., ¶¶6-18.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation ("Plan").  The Plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan was developed with the assistance of Lead Plaintiff's damages expert and is consistent with Lead Plaintiff's theory of the case and the Securities Exchange Act of 1934.  A thorough claims review process, including how deficiencies are addressed, is also explained in the Joaquin Declaration.  *Id.*, ¶¶24-27.

### 3.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Lead Counsel will make a fee and expense application at the time it

files the motion for final approval of the Settlement.  Lead Counsel intends to request fees not to exceed 30% of the Settlement Amount, plus expenses not to exceed $1,500,000.  The fee and expense application will also include a request for an award to Lead Plaintiff of up to $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.  In addition, the Stipulation provides that any fees and expenses awarded to Lead Counsel will be paid immediately upon award, notwithstanding any objections to the fees and expenses, or potential for appeal of any such award.  *See* Stipulation, ¶6.2.

### 4. The Parties Have No Side Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement.  The Settling Parties have entered into a standard supplemental agreement which provides that if Class Members opt-out of the Settlement such that the number of shares of Dell publicly traded common stock represented by such opt-outs equals or exceeds a certain amount, Dell shall have the option to terminate the Settlement.  Stipulation, ¶7.3.  While the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential.  *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

### E. There Was No Preferential Treatment; the Proposed Plan of Allocation Is Designed to Treat Class Members Equitably

A plan of allocation can be approved so long as it is fair, reasonable and adequate, and treats class members equitably.  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 214427, at *15-*16 (E.D. Tex. Dec. 18, 2017).  The Plan, which is set out in the Notice, explains how the Settlement proceeds will be equitably distributed among Authorized Claimants.

The Plan provides a formula for calculating the recognized claim of each Class Member, based on each such person's purchases or acquisitions of Dell common shares during the Class Period and when, and if, they sold.  Each eligible Class Member who submits a timely and valid

claim form will receive a *pro rata* distribution pursuant to the Plan.  Lead Plaintiff, just like all other

Class Members, will be subject to the same formula for distribution of the Settlement.

      **F.**      **The Factors Considered When Granting Final Approval Also Support**
                     **Preliminary Approval of the Proposed Settlement**

      When granting final approval of a settlement, courts in this Circuit consider: the assurance

that there is no fraud or collusion behind the settlement; "the stage of the proceedings and the

amount of discovery completed"; "the probability of plaintiffs' success on the merits"; "the range of

possible recovery"; "the complexity, expense, and likely duration of the litigation"; and "the

opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors

Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).[4]

      Lead Plaintiff, through its counsel, having carefully considered and evaluated, *inter alia*, the

relevant legal authorities and evidence to support the claims asserted, the likelihood of prevailing on

these claims, the risk, expense and duration of continued litigation, and the likely appeals and

subsequent proceedings necessary if Lead Plaintiff did prevail at trial, has concluded that the

Settlement is not only fair, reasonable, and adequate but a highly favorable resolution of this

complex action.  Lead Counsel has significant experience in securities and other complex class

action litigation and has negotiated numerous other substantial class action settlements throughout

the country.  *See* www.rgrdlaw.com.  Lead Counsel's opinion that the Settlement is in the best

interest of the Class weighs in favor of approval.  *See Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d

1157, 1216 (5th Cir. 1978) (if experienced counsel determine that a settlement is in the class' best

interest, "the attorney's views must be accorded great weight").

      To ensure that a plaintiff has had access to sufficient information to evaluate both the case

and the adequacy of the settlement, courts in the Fifth Circuit consider the stage of the proceedings

---

[4]    As notice of the Settlement has not yet been provided, the reaction of the Class is not addressed at this time.

4835-9923-3188.v1

and the discovery taken. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  Here, at the time Lead Plaintiff and Lead Counsel agreed to the settlement of this Litigation, both their knowledge and the proceedings themselves had reached a stage where they were able to make a highly informed and intelligent evaluation of the Litigation and propriety of the Settlement.  The parties briefed Defendants' motion to dismiss, Lead Plaintiff's motion for class certification, Defendants' motion for summary judgment, and motions to exclude expert reports and witnesses. Comprehensive document analysis and depositions were undertaken and fact and expert discovery was completed before the Settlement was reached.  Lead Counsel also participated in extensive settlement negotiations, including mediation with two experienced mediators where Lead Plaintiff's claims and Defendants' defenses were fully vetted.  Prior to the mediation sessions, the parties exchanged detailed statements, each supported by evidence further highlighting the factual and legal issues in dispute.  Having sufficient information to properly evaluate the case, the Litigation was settled on terms highly favorable to the Class.

Although Lead Counsel believes that the Class' claims have substantial merit, and is confident that it would have prevailed on the claims asserted, it recognizes the risks and expense necessary to prosecute the Class' claims against Defendants through trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entail.  As detailed above, Defendants have argued, and no doubt would have continued to argue, that liability was unwarranted because they made no false and/or misleading statements or omissions during the Class Period. Defendants would also continue to contest scienter, claiming that any alleged false or misleading statements made by Defendants were without fraudulent intent and that Defendants' Class Period stock sales were made for non-culpable reasons.  Although Lead Plaintiff was confident that it would have been able to support its claims with qualified and persuasive documentary evidence and fact and expert deposition testimony, jury reactions to competing experts are inherently difficult to

- 12 -

predict, and Defendants have retained four highly experienced experts to support their various defenses to liability.

Moreover, even if Lead Plaintiff successfully established liability at trial, it faced substantial risks in proving loss causation and damages. Defendants would continue to argue that any losses suffered by Class Members on their Dell investments were not attributable to the allegedly corrective disclosures. As with contested liability issues, issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts." Accordingly, in the absence of a settlement, there was a real risk that the Class would have recovered an amount significantly less than the total amount – or even nothing at all. Thus, $21,000,000, when viewed in the context of the significant risks and uncertainties involved in proving both liability and damages, weighs strongly in favor of approving the Settlement.

Likewise, the Settlement falls within a reasonable range of reasonableness. "'In considering the range of possible recovery, the Court need not consider recoveries that are beyond the range of the most minimal probability.'" *Hays*, 2019 U.S. Dist. LEXIS 17029, at *28 (citation omitted). Moreover, "[t]hat the settlement amount represents something less than the total potential recovery does not, of course, warrant withholding approval." *Id.* "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *see also Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982).

Given the existence of studies which suggest that the median recovery as a percentage of estimated damages in shareholder class actions is less than that recovered here, *see, e.g.*, Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* at 36, Figure 28 (NERA Jan. 29, 2019) (showing median percentage recovery to investor losses in securities class actions in 2018 was approximately 2.6%), the recovery here is an excellent

- 13 -

result as it represents as much as 7% of Lead Plaintiff's expert's estimate of maximum viable damages, and a much greater percentage of Defendants' estimate of damages, which was zero.

Lead Counsel took all of the various risks and uncertainties into account and applied the particular facts of this case to its considerable experience as one of the most successful securities fraud class action firms in the country.  Based on the considered judgment of the numerous attorneys involved in this case, Lead Counsel strongly endorses the Settlement.

In short, while Lead Plaintiff and its counsel believe that the claims asserted have merit, if the Litigation continued, Lead Plaintiff and the Class would bear the risks of establishing liability and damage issues that have been and would continue to be vigorously challenged by Defendants. Absent settlement, this contest would have ultimately developed into a battle of competing facts and inferences, competing experts, and a credibility toss-up to be decided by the jury.  By contrast, the $21,000,000 Settlement is immediately realizable by the Class and eliminates all of these risks. Importantly, an evaluation of the benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties.  Indeed, the "'''very object of a compromise is 'to avoid the determination of sharply contested and dubious issues.'''" *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (citations omitted).

While Lead Plaintiff believes the Settlement merits final approval, the Court need not make that determination now.  The Court is being asked to permit notice of the terms of the Settlement to be sent to the Class and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any expressed views by Class Members about the fairness of the Settlement and the Plan of Allocation.  *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.162[3] (3d ed. 2013).

**IV.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE AND
        SATISFIES THE REQUIREMENTS OF RULE 23 AND THE PSLRA**

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed settlement).  Fed. R. Civ. P. 23(e)(1)(B).  Here, the parties negotiated the form of the Notice of Proposed Settlement of Class Action (the "Notice") to be disseminated to all persons who fall within the definition of the Class and whose names and addresses have been or can be identified from or through Dell's transfer records.  In addition, the Claims Administrator will engage in an extensive outreach plan to send the Notice to entities that commonly hold securities in "street name" as nominees for the benefit of their customers, who are the beneficial purchasers of the securities.  The Court is respectively referred to the Joaquin Declaration for a detailed description of the notice program.  The parties further propose to supplement the mailed Notice with a Summary Notice published in *The Wall Street Journal* and transmitted over the *Business Wire*.  The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3.

Furthermore, in securities class actions, the PSLRA requires the notice of settlement to include:  (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to

- 15 -

answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."  15 U.S.C. §78u-4(a)(7).  The Notice includes all of the information required by the PSLRA, as well as additional relevant information.

The proposed form of notice describes the Settlement and sets forth the Settlement Amount ($21,000,000) and the average distribution per damaged share if claims for 100% of such shares are made ($0.17); states the parties' disagreement over damages and liability; and describes the Plan.  In addition, the Notice briefly explains the nature, history and status of the Litigation; sets forth the definition of the Class; states the Class' claims and issues; discusses the rights of persons who fall within the definition of the Class; and summarizes the reasons the parties are proposing the Settlement.

Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Class.  Likewise, for those Class Members who wish to participate in the Settlement, the Notice provides instructions on the timing and process for completing and submitting the Proof of Claim and Release form that accompanies the Notice.  The Summary Notice also informs Class Members that copies of the Notice and Proof of Claim and Release form may be obtained by writing the Claims Administrator, or by accessing the documents on the case specific website described in the Notice.

Finally, the Notice sets forth the date, time, and place of the Settlement Hearing, along with the procedures for commenting on the Settlement and includes the postal address for the Court, Lead Counsel, and counsel for Defendants.

The contents of the Notice and Summary Notice satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, in granting preliminary approval of the proposed Settlement, Lead Plaintiff respectfully requests that the Court also approve the parties' proposed form and method of giving notice to the Class.

- 16 -

## V.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set: (1) a Settlement Hearing date; (2) dates for mailing the Notice to Class Members and publication of the Summary Notice; (3) deadlines for requesting exclusion from the Class and objecting to the Settlement, the Plan, and/or attorneys' fees and expenses; (4) deadline for filing papers in support of the Settlement, Plan and attorneys' fees and expenses; and (5) the submission of Proof of Claim and Release forms.  Lead Plaintiff proposes the following schedule:

| Notice mailed to Class ("Notice Date") | 21 days after entry of the Notice Order |
|---|---|
| Summary Notice published | 7 days after the Notice Date |
| Deadline for filing initial papers in support of the Settlement, Plan and attorneys' fees and expenses | 35 days prior to the Settlement Hearing |
| Deadline for objecting to the Settlement, Plan and/or attorneys' fees and expenses | 21 days prior to the Settlement Hearing |
| Deadline for requesting exclusion from the Class | 21 days prior to the Settlement Hearing |
| Deadline for filing reply papers in support of the Settlement, Plan and award of attorneys' fees and expenses | 7 days prior to the Settlement Hearing |
| Settlement Hearing date | At the Court's convenience, but no earlier than 100 days after entry of the Notice Order |
| Last day for submitting Proof of Claim and Release forms | 120 days after the Notice Date or such other time as set by the Court |

## VI.     CONCLUSION

For all the foregoing reasons, the proposed Settlement warrants the Court's preliminary approval and the Notice Order should be entered.

- 17 -

DATED:  September 16, 2019   Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG
ELLEN GUSIKOFF STEWART
X. JAY ALVAREZ
LAURIE L. LARGENT
DANIELLE S. MYERS
STEVEN M. JODLOWSKI
RACHEL A. COCALIS


     s/Laurie L. Largent
    LAURIE L. LARGENT

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
jaya@rgrdlaw.com
llargent@rgrdlaw.com
dmyers@rgrdlaw.com
sjodlowski@rgrdlaw.com
rcocalis@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)
cbillings@swappc.com

Additional Counsel for Plaintiff

- 18 -

4835-9923-3188.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 16, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ LAURIE L. LARGENT
LAURIE L. LARGENT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  LLargent@rgrdlaw.com

# Mailing Information for a Case 1:15-cv-00374-LY City of Pontiac General Employees Retirement System v. Dell Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  jaya@rgrdlaw.com,scaesar@rgrdlaw.com

- **Cynthia J. Billings**
  cbillings@swappc.com

- **Christina Elizabeth Bortz**
  christina.bortz@alston.com,joyce.dogru@alston.com

- **Rachel A. Cocalis**
  rcocalis@rgrdlaw.com

- **Marcy Hogan Greer**
  mgreer@adjtlaw.com,gverlander@adjtlaw.com,ggrimm@adjtlaw.com

- **Tor Gronborg**
  TorG@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Susan Elaine Hurd**
  susan.hurd@alston.com,angie.knowles@alston.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Evan Jay Kaufman**
  ekaufman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **John L. Latham**
  john.latham@alston.com,chuck.mattson@alston.com

- **Alexander Seton Lorenzo**
  alexander.lorenzo@alston.com,managingclerksoffice-NYC@alston.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com,jaimem@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew T. Sumner**
  andy.sumner@alston.com,joyce.dogru@alston.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)